**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TONIA RAE BETTS,                                   Case No. 1:18-cv-612

           Plaintiff,                              Dlott, J.
                                                   Bowman, M.J.
   v.


COMMISSIONER OF SOCIAL SECURITY,

           Defendant.


## REPORT AND RECOMMENDATION

Plaintiff Tonia Rae Betts filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff asserts three claims of error. As explained below, I conclude that the ALJ's decision should be AFFIRMED as to the Commissioner's adverse DIB decision, but REVERSED AND REMANDED for further development of the record concerning Plaintiff's separate application for SSI.

### I. Summary of Administrative Record

On October 24, 2014, Plaintiff filed applications seeking both disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's date last insured ("DLI") was June 30, 2012, meaning that she is required to show disability prior to that date in order to receive DIB benefits. In both her DIB and SSI applications, Plaintiff alleged a disability onset date of April 13, 2009 based upon back pain, depression, Bipolar

disorder, fibromyalgia, sleep apnea, high blood pressure, and anxiety.[1] (Tr. 72).[2] Plaintiff's applications were denied initially and upon reconsideration, following which she sought an evidentiary hearing. On May 26, 2017, Plaintiff appeared, through counsel, and gave testimony before Administrative Law Judge ("ALJ") Christopher Tindale; a vocational expert also testified. (Tr. 38-71). At the hearing, in addition to the multiple ailments listed in her applications, Plaintiff testified to knee pain and carpal tunnel syndrome in both wrists.

Plaintiff was 34 years old on her alleged disability onset date, and remained in the same "younger individual" age category through the date of the ALJ's decision. She has a high school education and testified in 2017 that she currently lives in an apartment with stairs by herself, but that one of her sons, age 22, stays with her part-time to assist her.[3] (Tr. 47). She testified to past relevant work as a freight manager, a retail assistant manager, and as a front-end manager. (Tr. 66-67).

On December 27, 2017, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 18-30). The ALJ determined that Plaintiff has severe impairments of: "knee arthropathy, disorders of the spine, hyperlipidemia, asthma, migraines, obesity, mood disorder and anxiety disorder." (Tr. 21). The ALJ found Plaintiff's alleged impairments of obstructive sleep apnea and gastroesophageal reflux

---

[1] Plaintiff's DIB claim is based on a record that reflects no substantial gainful activity later than April 2009. (Tr. 232). Unlike DIB, SSI does not require proof of insured status but only requires a showing of financial need. However, a claimant cannot be paid SSI benefits earlier than the month prior to the date the application is filed, regardless of the alleged disability onset date.

[2] The citation "Tr." refers to transcript pages of the Administrative Record. Although Plaintiff cites to PageID numbers, Plaintiff's counsel is strongly encouraged to cite to the Administrative Record in any future social security appeals, as PageID numbers are less useful in social security records.

[3] Other portions of the record reflect that Plaintiff is married but separated, and has two biological sons as well as two stepchildren. (Tr. 1601). Records suggest that Plaintiff prepared meals and provided some level of care for her children during some portion of the time period after her alleged onset of disability. (See, e.g., Tr. 123). The son who was 22 at the time of the hearing would have been a minor aged 14 on the alleged date of the onset of her disability.

2

disease to be non-severe, and found her alleged fibromyalgia to be a "non-medically determinable impairment" of fibromyalgia. (*Id.*) Plaintiff does not dispute the ALJ's determination of which impairments were severe or non-severe, nor does she challenge his determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

The ALJ agreed that Plaintiff cannot perform her past relevant work, all of which was considered "skilled," but nevertheless found that she retains the residual functional capacity ("RFC") to perform a restricted range of unskilled light work, subject to the following limitations:

> [S]he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, but only occasionally stoop, kneel, crouch, crawl. She can frequently handle and finger. She must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation. She is limited to simple, routine tasks consistent with unskilled work in a work environment free of fast production rate or pace work. She can have no contact with the public, occasional contact with supervisors, and only occasional and superficial contact with co-workers, with superficial contact defined as no tandem tasks. She must work in a low stress environment, defined as having only occasional changes in the work setting and only occasional decision making required.

(Tr. 24). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of router, label coder, and collator operator. (Tr. 31). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence as well as in his evaluation of Plaintiff's subjective

symptoms. Based upon the first two errors, Plaintiff's third assertion of error maintains that the hypothetical question posed to the vocational expert did not account for all of her limitations, and therefore does not constitute substantial evidence to support the non-disability determination.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from

the courts. If the Secretary's decision is supported by substantial evidence,
a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

## B. Plaintiff's Claims

### 1. Contextual Review Applied to Two Timeframes

In her first claim, Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinions of two treating physicians (a pain doctor and a psychiatrist) and by instead assigning greater weight to the opinions of consulting physicians. Notably, both

of the treating-physician opinions on which Plaintiff relies were rendered after her DLI. Plaintiff's second claim is that the ALJ erred in evaluating her subjective pain complaints. In her third claim, Plaintiff asserts that the first two errors led to improper formulation of her residual functional capacity, such that the vocational expert's testimony does not provide substantial evidence to support the non-disability finding.

The record presented reflects some error in the ALJ's analysis of the medical opinion evidence and of portions of the record. However, close review suggests that any *reversible* error was limited to the ALJ's review of evidence that post-dated Plaintiff's DLI of June 30, 2012. Although neither the parties in this appeal, nor the ALJ in his decision, have differentiated between the medical evidence prior to June 30, 2012, versus post-DLI evidence that would be relevant only to her SSI claim, the undersigned concludes that distinction is warranted on appeal.

This Court will not remand where remand would amount to a "useless formality." *See Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969) ); *Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). So long as substantial evidence supports the same conclusion, and the errors are deemed "harmless," then this Court will affirm. *Keeton v. Com'r of Social Sec.*, 583 Fed. Appx. 515, 524 (6th Cir. 2014). Based upon the totality of the record, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Plaintiff did not carry her burden to show disability prior to June 30, 2012, her DLI for purposes of showing her entitlement to DIB. However, the record suggests that Plaintiff's conditions may have continued to deteriorate over time. For that reason, Plaintiff has demonstrated sufficient error in this judicial appeal to cast doubt upon the ALJ's determination that Plaintiff did not subsequently become entitled to

SSI, prior to the final date of the ALJ's decision. *Contrast Hauk v. Com'r of Soc. Sec*., 2018 WL 1557248 at *3 (S.D. Ohio Mar. 30, 2018) (affirming where Plaintiff's claims did not "cast doubt on the ALJ's [RFC] determination"). Therefore, remand for further development of the SSI record is recommended.

### 2.  The Medical Opinion Evidence

#### a.  Applicable Regulatory Standard

As stated, Plaintiff's first claim of error challenges the ALJ's evaluation of the medical opinion evidence. Although the ultimate determination of a claimant's RFC and the disability finding are reserved to the Commissioner, social security regulations generally provide for a hierarchical scheme in the consideration of medical opinion evidence.  Until recent changes that took effect March 27, 2017, the regulations have required an ALJ to give the greatest weight to the opinions of a treating physician, with less presumptive weight to be afforded to the opinions of one-time examining consultants, and the least amount of weight to be automatically afforded to non-examining consultants. Thus, the well-established treating physician rule[4] requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir.2009).

_____

[4] Effective March 27, 2017, many long-standing regulations have been significantly revised or rescinded, with the old hierarchy discarded. For example, a new rule set forth in 20 C.F.R. § 404.1520c entirely replaces the treating physician rule.  Although some revisions apply to claims that were pending on March 27, 2017, the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Based on the date that Plaintiff filed her claim in this case, the "treating physician rule" and related SSRs and case law continue to apply. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

The relevant regulation concerning the opinions of treating physicians specifically provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2)*; see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind the rule has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security,* 378 F.3d 541, 544 (6th Cir.2004) (quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive "controlling weight" given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions will not be given controlling weight. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley* 581 F.3d at 406;*see also* 20 C.F.R. § 404.1527(c)(2). In cases in which a treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

### b. Medical Opinions Concerning Plaintiff's Back Pain

At the hearing, Plaintiff testified that the main issue that prevents her from working is her back pain. (Tr. 49). Four physicians offered opinions concerning Plaintiff's physical pain complaints: three agency consultants, and one treating pain management physician. All four opinions were dated years *after* Plaintiff's DLI, making them of limited relevance to her DIB claim,[5] but potentially of greater relevance to her SSI claim. The three agency consultants offered opinions consistent with a residual functional capacity finding that Plaintiff could perform medium level work with few physical restrictions, whereas Plaintiff's treating pain management specialist opined that Plaintiff was so limited by debilitating back and neck pain that she could not engage in any type of work.

---

[5] See *Conner v. Comm'r of Soc. Sec.*, 658 Fed. Appx. 248, 254 (6th Cir. 2016) (noting medical source statements after DLI are "generally of little probative value"), *reh'g denied* (Sept. 13, 2016) (citing *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004)).

On May 11, 2015, Plaintiff submitted to consulting examination by Dr. Fritzhand. Dr. Fritzhand acknowledged that his assessment was being made "without benefit of x-rays of the lumbar spine." (Tr. 1616). However, based upon extensive functional tests, he opined that Plaintiff appeared capable of a "moderate amount" of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects. (Tr. 1616). The ALJ criticized his opinions as "vague" but stated the opinions were generally "consistent with other evidence" and gave them "some weight." (Tr. 29). A week later on May 18, 2015, non-examining consultant physician Abraham Mikalov, M.D. opined that Plaintiff could perform medium exertional work with few non-exertional limitations based chiefly upon two severe impairments: fibromyalgia and obesity. (Tr. 81-82). On August 14, 2015, on reconsideration, Gerald Klyop, M.D. agreed that Plaintiff's fibromyalgia and obesity limited her to medium work, with few other restrictions. (Tr. 111-112). The ALJ also gave Drs. Mikalov and Klyop's opinions "some weight." (Tr. 29).

Somewhat curiously in light of the weight ostensibly attributed to the consulting opinions, the ALJ did not refer at all to Plaintiff's morbid obesity other than including obesity among her severe impairments,[6] and found Plaintiff's alleged fibromyalgia not to be medically determinable. (Tr. 21). In explaining his decision not to give greater weight to the consultants, the ALJ noted the existence of "new evidence at the hearing level that

---

[6] Plaintiff testified that she weighed 270 at the time of the hearing, with a BMI that exceeded 40. Plaintiff does not raise the ALJ's failure to address her obesity as a claim of error, and to that extent, any such error arguably is waived. However, because remand is required for other reasons and the issue was central to the consulting physicians' opinions, the ALJ should discuss the impact of Plaintiff's morbid obesity on her other impairments on remand, including but not limited to her subjective complaints relating to her back impairment. *See generally* SSR 02-01p (explicitly acknowledging the impact of obesity on musculoskeletal impairments as well as on mental impairments); *accord Bornstein v. Com'r*, 2018 WL 3448604 (S.D. Ohio June 20, 2018) (reversing and remanding for consideration of morbid obesity where record suggested obesity may have exacerbated severe conditions including depression and musculoskeletal pain); *Heighton v. Com'r*, 2013 WL 214695 at 10 (S.D. Ohio Jan. 18, 2013).

show[s] the claimant has greater limitations," referencing her asthma and a knee impairment. (Tr. 29). In contrast to the consulting opinions that Plaintiff could perform medium work, the ALJ limited Plaintiff to light work, and added significant non-exertional restrictions that had not been included by the consultants.

On appeal, Plaintiff argues that the ALJ erred by failing to give controlling weight to the RFC opinions offered by Plaintiff's treating pain management physician, Dr. Fletcher. Although Plaintiff's records reflect a few complaints of low back pain before her DLI, she did not seek treatment from Dr. Fletcher until months after her DLI, on September 25, 2012.[7] At her initial visit to Dr. Fletcher, Plaintiff reported a "gradual onset" of fluctuating but persistent chronic pain. (Tr. 1617). That report is consistent with an April 16, 2012 record in which she reported to a treating physical medicine physician that she was experiencing an increase in back pain at a level that had been "bad for about a month now." (Tr. 845). On that date, prior to Plaintiff's DLI, Dr. Long noted multiple imaging studies including x-rays and a prior MRI showed only "minimal changes" and that an examination "shows no focal neurological deficits to explain her ongoing pain." (Tr. 847). Dr. Long suggested a referral "to chronic pain psychology to get a better handle on her overall pain issues as I do not believe this is spinal related but a symptom of …much deeper issues related to anxiety and depression." (*Id.*)

At her second visit to Dr. Fletcher on October 9, 2012, Dr. Fletcher reported a medical history reflecting that she had "failed to responds to three months of conservative management" for her "non radicular" pain, with imaging revealing "no evidence" of any nerve root compression or other significant objective findings. (Tr. 1622, emphasis

---

[7] Subjective pain complaints can support disability, but cases based on allegations of disabling pain that are not wholly supported by objective evidence are often among the most difficult to resolve.

added). Despite relatively modest physical findings, Plaintiff continued to report chronic back and neck pain and continued to treat with Dr. Fletcher in the years following her June 30, 2012 DLI. In a letter dated September 2015, Dr. Fletcher opined:

> Patient's pain inhibits her from functioning on daily basis. Patient is unable to perform activities of daily living without pain. Patient can not [sic] tolerate prolonged positioning such as bending, standing, sitting or walking > 5 minutes. Patient feels the interventional treatment she receives under my care provides her with enough relief to stay [as] functional as possible.

(Tr. 1824).

On January 22, 2016, Dr. Fletcher provided a second letter, stating that Plaintiff is seen on a monthly basis for pain management of her spondylosis without myelopathy or radiculopathy of the cervical/thoracic and lumbosacral regions, and occipital neuralgia. In his second letter, Dr. Fletcher states:

> The pain in her neck and lower back is moderate to severe and the problem has worsened. She has radiation of the pain to right arm and posterior head on the left…. Aggravating factors include driving, exertion, flexion, hyperextension, turning her head, rotation, lifting, pushing or pulling, stooping, twisting, bending, prolonged sitting, standing and walking. Associated symptoms include decrease[d] mobility in her neck, difficulty sleeping, and muscle spasms.
>
> She has failed conservative measures….
>
> On exam she has painful and moderate restriction with range of motion of the cervical and lumbosacral spine. Maximum tenderness with palpation over the bilateral paravertebral musculature and spinous processes. Right shoulder strength is decreased. Reflexes in the upper and lower extremities are normal.
>
> Ms. Bettes has had multiple interventional pain management procedures that provide palliative relief. She is also prescribed a narcotic pain medication that can cause drowsiness, dizziness, and impaired cognitive function.
>
> Based on subjective and objective data, [Ms.] Bettes has not been able to do any type of work from 6/30/2012 to the present involving prolonged sitting, standing, walking, bending, stooping, climbing, pushing, pulling, lifting greater than 10 pounds occasionally, and work that put[s] undo strain on her neck, if it required looking down or up…. She would not be able to

12

drive or operate any heavy machinery due to the medications prescribed for her pain.

(Tr. 1826).

The ALJ gave Dr. Fletcher's opinions concerning Plaintiff's allegedly debilitating pain, including her alleged inability to stand, sit or walk more than 5 minutes, "little weight." (Tr. 29). Although the ALJ did not specifically highlight the discrepancies between Dr. Fletcher's opinions and Plaintiff's own testimony, the ALJ noted elsewhere in his opinion Plaintiff's estimate that she could stand for 15-20 minutes, sit for 20 minutes, drive for 20 minutes, and walk a block with two stops. (Tr. 25). Similarly, in contrast to Dr. Fletcher's opinion that Plaintiff was unable to drive, Plaintiff testified that she drives once or twice a week, with no medication side effects. (Tr. 58). In a section discussing Plaintiff's activity level, the ALJ noted that Plaintiff could sweep and do laundry, prepares meals, sews, watches television, and reads, performs light household chores, and that she spends time with family and shops. (Tr. 23-24).

The ALJ recounted that Plaintiff "typically observed with a normal gait" despite one occasion on which she was observed "moving gingerly and slowly in April 2014." (Tr. 25). The ALJ acknowledged numerous examinations on which Plaintiff reported tenderness to palpation in her lumbar spine, but also pointed to two occasions (during ER visits in June 2010 and January 2014 for other ailments) on which she reported no back tenderness. (*Id.*, citing Tr. 611, 1403). He noted times in which she had a reduced range of motion in her lumbar spine, but pointed to three occasions in which she did not. (Tr. 25). The ALJ pointed to negative straight leg raising test results. Summing up, the ALJ

noted "some abnormal results, mostly with tenderness to palpation, but …mostly …a normal gait." (Tr. 26).[8]  Turning to Dr. Fletcher's opinions, the ALJ explained:

> [E]ven though they [the opinions] come from a treating source, many of them are vague and appear to be based, at least in part, on the claimant's subjective self-reports.  Further the issue as to whether the claimant is able to work is an issue left to the Commissioner.  These opinions are also extreme and inconsistent with the opinion of the consultative examiner [Dr. Fritzhand]…and, more importantly, with evidence that showed the claimant was often observed with fairly normal physical examinations including a normal gait…though she was observed as moving gingerly and slowly in April 2014.

(*Id.*, internal citations to record omitted).

An ALJ commits legal error if he relies upon a consulting physician's report as the sole basis for rejecting a treating physician's report.  *See Gayheart v. Com'r of Soc. Sec.,* 710 F.3d 365 (6th Cir.2013) (reversing decision where ALJ had rejected treating physician opinion solely based on the conflicting opinions of non-examining consultants).   Here, the ALJ relied partly upon Dr. Fritzhand's one-time examination as grounds for rejecting Dr. Fletcher's opinions, but also reasoned that Dr. Fletcher's opinions were "vague" and/or based on Plaintiff's "subjective self-reports."  It is not entirely clear what the ALJ meant by the latter criticisms.  Dr. Fletcher opined fairly specifically that he did not believe Plaintiff could engage in postural activities for 5 minutes, and could not drive.  And a treating pain specialist often relies upon his patient's "subjective" pain

---

[8] The Commissioner bolsters the ALJ's more minimalistic analysis by pointing out that with rare exceptions, Plaintiff was found to walk with a normal gait and had multiple negative straight leg-raise tests between 2010 and 2017.  (Tr. 662, 666, 752, 815, 829, 834, 846-47, 976, 1002, 1023-24, 1133, 1183, 1311, 1316, 1388, 1381, 1397, 1414-15, 1425, 1449, 1661, 1664, 1666, 1969-70, 1676, 1984, 2016-17, 2030, 2078, 2092, 2138).  Plaintiff also frequently exhibited full strength and range of motion in her back.  (Tr. 580, 591, 634, 705, 810, 1325, 2024, 2132).  However, the record also reflects consistent and persistent reports of increased pain after June 30, 2012.  Unless the error is clearly harmless, it is generally inappropriate for this Court to rely upon post-hoc rationalizations of appellate counsel to affirm the denial of a disability claim. *Accord Allen v. Berryhill*, 273 F. Supp.3d at 774 ("[T]he Commissioner's post hoc rationalizations are not an acceptable substitute for the ALJ's lack of rationale concerning her treatment of the opinions of Allen's treating psychiatrist."); *Boshears v. Com'r*, 2015 WL 1415101 at *8 (S.D. Ohio March 26, 2015).

reports, including those provided on clinical examination. *See generally Allen v. Berryhill*, 273 F. Supp.3d 763, 774 (M.D. Tenn 2017) (holding it was improper to reject treating psychiatrist's opinion on the basis that it was based on subjective complaints). In support of Dr. Fletcher's exam findings, Plaintiff points to the records of Dr. Sauodian, which also noted tenderness and pain in Plaintiff's lumbar area. On the whole, I agree that the ALJ's articulation of the basis for rejecting Dr. Fletcher's opinions in this case was inadequate to satisfy the "good reasons" standard.

At the same time, Dr. Fletcher's opinions do not appear to be fully supported by either imaging studies or by any other evidence prior to Plaintiff's DLI. All objective studies prior to June 30, 2012 reflect only mild findings. Not only were Dr. Fletcher's opinions rendered years after Plaintiff's DLI, but his second letter explicitly relates only to the post-DLI period, and many of his more extreme functional limitations are contradicted by Plaintiff's own testimony. Nevertheless, based on the articulation error and some doubt as to whether substantial evidence exists to support greater RFC restrictions for purposes of Plaintiff's SSI application (whether or not the limitations would be as disabling as Dr. Fletcher suggests), the undersigned cannot find the error to be harmless.

### c. Medical Opinions Concerning Mental Impairments

The undersigned's conclusion that remand for additional review of the medical opinion evidence is necessary is amplified when the Court considers the ALJ's assessment of the mental RFC opinions offered by consulting psychologists and a long-time treating psychiatrist. Like the physical RFC opinions, all mental RFC opinions were offered long after the expiration of Plaintiff's DLI, but remain relevant to the SSI determination. Two consulting psychologists rendered opinions that were consistent with the ALJ's mental RFC findings, but the ALJ rejected the opinions of Plaintiff's treating

psychiatrist, Dr. Cory Pelnick. As with his articulated basis for rejecting Dr. Fletcher's opinions, the ALJ's articulated reasons for rejecting Dr. Pelnick's opinions fail to satisfy the "good reasons" standard.

On April 20, 2015, Plaintiff submitted to an examination by consulting psychologist Brian Griffiths, Psy.D. On April 30, 2015, non-examining consultant Robyn Murry-Hoffman, Ph.D., opined based on Dr. Griffiths' exam that Plaintiff had moderate limitations in her abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and perform at a consistent pace without interruptions from psychological symptoms or unreasonable rest periods. Dr. Murry-Hoffman opined that Plaintiff was "capable of attending and persisting in order to complete simple and multi-step tasks in a setting not needing close sustained focus/attention or sustained fast pace." (Tr. 83-84). She further opined that Plaintiff was moderately limited in her abilities to interact appropriately with the general public and to respond appropriately to changes in the work setting. However, in all other functional areas, the consulting psychologist opined that Plaintiff either had no limitation or was not significantly limited. (*Id.*) On August 21, 2015, Patricia Kirwin, Ph.D., concurred with that assessment. (Tr. 108). The ALJ's mental RFC, limiting Plaintiff to "simple, routine tasks consistent with unskilled work…free of fast production rate or pace work," with "no contact with the public" and only "occasional contact" with supervisors and co-workers and no tandem tasks, and with only "occasional" changes in the work setting or decision making required, (Tr. 24), is consistent with the non-examining consultants' opinions.

On June 6, 2017, Plaintiff's treating psychiatrist, Dr. Cory Pelnick, completed a mental impairment questionnaire in which he indicated that he had begun treating Plaintiff some 13 years earlier, in February 2004, and that the frequency of treatment was every

2 weeks.[9]  (Tr. 1946).  Dr. Pelnick states that Plaintiff has been diagnosed with Bipolar 1 disorder, severe, with psychotic features, and with agoraphobia with panic attacks.  (*Id.*) He indicates Plaintiff has been twice hospitalized for psychiatric issues, in June 2015 and again in May 2016.

The mental RFC form completed by Dr. Pelnick asks for his opinions on the "degree of [mental] limitation" in 23 areas within four broad categories that include "understanding a memory," "concentration and persistence," "social interactions" and "adaptation." (Tr. 1949).  The four categories roughly correspond to what are commonly known as the "B criteria" in social security regulations, which are criteria designed to assess whether a mental impairment meets or medically equals listing level severity.  If a claimant can prove listing level severity by showing one "extreme" or two "marked" impairments, she will be entitled to a presumption of disability at Step 3 of the sequential analysis.  Here, the ALJ specifically evaluated Listings 12.04 and 12.06 (affective and anxiety-related disorders) and 12.15 (post-traumatic stress disorder), but determined that Plaintiff did not have marked or extreme limitations in any of the four broad functional areas, but instead had only "moderate" limitations in all four areas.  Although Plaintiff does not contest the determination that she did not meet listing level severity, she does challenge the mental RFC determination, arguing that she has greater mental restrictions than those found by the ALJ.

Dr. Pelnick checked boxes for "marked" limitation (defined as "constant" interference of more than 2/3 of an 8-hr. workday) in 6 areas, and an indefinite hybrid category of "moderate-to-marked" limitation (defined as "frequent" interference of 1/3 to

---

[9] Two identical copies of Dr. Pelnick's assessment are included in the administrative record as Exhibit Nos. 11F and 12F.  For the Court's convenience, citations are solely to the transcript pages of Exhibit 11F.

2/3 of a workday) in 10 additional areas.[10] (*Id.*) In only 7 areas does Dr. Pelnick opine that Plaintiff's level of limitation is only "moderate," defined as "occasional – up to 1/3 of an 8-hr. workday." (*Id.*) Dr. Pelnick opines that Plaintiff's symptoms impact her in every functional area that is listed. He further opines that she is likely to be absent from work "as a result of…impairments or treatment" "[m]ore than three times per month." (Tr. 1950). He attributes the severity of her symptoms to her mental impairments and denies that her psychiatric conditions exacerbate her physical pain, based upon his patient's subjective report. (Tr. 1948).

The ALJ gave Dr. Pelnick's opinions "little weight" stating that the opinions were "extreme and not consistent with the record." (Tr. 30). Simply stating that medical opinions are "extreme" without more is not adequate to explain the rejection of a treating physician's opinions, which must be afforded controlling weight unless they are not well-supported or are inconsistent with other substantial evidence. Here, the ALJ states that that Dr. Pelnick's opinions were inconsistent with the record, but his explanation falls short:

> For example, the Group Health Association [sic] records (13F) are similar to other treatment records and show the claimant was mostly normal on physical exam, she was routinely alert and oriented, and psych exams showed normal mood, affect, and behavior. Additionally, as detailed above, the claimant has fairly intact activities of daily living.

(*Id.*).

The inconsistency with Group Health Associates records is not a sufficient reason to reject the opinions. In contrast to Dr. Pelnick, a psychiatrist with specialized training and a 13-year plus history of frequent treatment with Plaintiff, the referenced records do

---

[10] Only "marked" impairments suggest listing level severity. The "moderate-to-marked" category on the form used by Dr. Pelnick is therefore ambiguous.

not include examination or treatment records from psychologists or psychiatrists, but instead primarily reflect treatment of Plaintiff's physical conditions. (*See generally* Tr. 1966-2072). The only "psych exams" within the referenced records are pro forma statements that Plaintiff was alert, oriented to person, place and time, and appeared to have "normal" mood on occasion when presenting with physical complaints. On remand, the ALJ should better articulate the basis for the evaluation of the mental RFC opinions offered by Dr. Pelnick.

### 2. The Assessment of Subjective Complaints

Plaintiff's second claim is that the ALJ committed reversible error when he made an adverse credibility determination. The ALJ reasoned:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the record because the evidence shows frequent normal results, improvements with treatment, and fairly intact activities of daily living (see the B criteria above).

(Tr. 25).

The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in

the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the

following factors:

1.  Daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and

former SSR 96–7p.

Despite clarifying the basis for the analysis of subjective complaints and

corresponding elimination of the term "credibility" from the text in order to avoid "character

analysis," SSR 16-3p was not intended to substantially change existing law.  *See Banks*

*v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20,

2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to

substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan.

14, 2019).  Thus, it remains the province of the ALJ and not the reviewing court, to assess

the consistency of subjective complaints about the impact of a claimant's symptoms with

the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

As stated, the primary distinction between SSR 16-3p and the former SSR 96-7p

is the elimination of the word "credibility" and clarifying that the focus of the evaluation

should be on the "consistency" of subjective complaints with the record as a whole.  The elimination of the word "credibility" from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase "credibility determination."  Nevertheless, the essence of the regulatory framework remains unchanged.  Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions.  *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, an assertion of error in a credibility/consistency determination requires a particularly strong showing by a plaintiff.  Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In the case presented, Plaintiff argues that the ALJ should not have relied upon her mild objective testing results given her fibromyalgia diagnosis. (Doc. 8 at 19). However, the ALJ found Plaintiff's fibromyalgia not to be medically determinable, and Plaintiff does not challenge that finding in this appeal.  Plaintiff makes other brief

arguments that the ALJ relied too much on alleged improvement with treatment while ignoring her continued pain complaints and that the ALJ cited daily activities that cannot be equated with the ability to sustain full-time work. However, an ALJ may "justifiably" consider a plaintiff's ability to conduct daily life activities in the face of complaints of disabling pain. *See Warner*, 375 F.3d at 392; *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990). In short, remand might not be required were this the only claim of error. However, when viewed in the context of the totality of the record, including but not limited to the ALJ's improper evaluation of the medical opinion evidence, the evaluation of Plaintiff's subjective complaints merits re-evaluation on remand.

### 3. Plaintiff's Claim of Error in the Hypothetical

In her third claim, Plaintiff asserts that the hypothetical question posed to the vocational expert did not account for all of her limitations, and therefore does not constitute substantial evidence to support the non-disability determination. The error is cumulative. Following the correction of other errors including but not limited to the re-assessment of medical opinion evidence and the record as a whole, the ALJ should reassess Plaintiff's residual functional capacity.

### III. Conclusion and Recommendation

Substantial evidence supports the ALJ's conclusion that Plaintiff was not under a disability through her June 30, 2012 DLI. However, it is a closer issue as to whether substantial evidence exists that Plaintiff did not become disabled, for purposes of SSI, at some point after that date. Reviewing the totality of the record and based on the analysis actually articulated by the ALJ in this case, the undersigned concludes that remand under sentence four for further development of the record is required.

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief, because the current record does not establish Plaintiff's entitlement to benefits as of her alleged onset date or on any precise date following her DLI. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, **IT IS RECOMMENDED THAT** Defendant's DIB decision be **AFFIRMED** as supported by substantial evidence, but that the Defendant's SSI decision be **REVERSED** as not substantially supported. This case should be remanded under sentence four concerning the SSI claim alone, and this case should be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TONIA RAE BETTS,                                            Case No. 1:18-cv-612

        Plaintiff,                                            Dlott, J.
                                                           Bowman, M.J.
   v.


COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).